May it please the Court, my name is Cal Potter. I'm from Las Vegas, Nevada. I represent Ronnie Baxter, the plaintiff appellant in this case. Knowing that the Court is familiar with the facts of this matter, I'd like to focus first on why the District Court erred in dismissing the state tort claim actions, finding that there was an immunity that was available to Dr. D'Amico for what we would submit were negligent or malpractice claims. Maybe I can help you focus that, just from my own perspective, and I'm actually glad you're starting there. You cite, I think in your brief, a case, Butler, which contained within Butler talks about Martinez, which apparently would be the highest court standard right now for us to review that, which didn't exist at the time that the District Court made the determination, correct? That's correct, Your Honor. You don't do much other than that, so maybe besides the fact as to why we should address it, tell me why you've preserved it. It's not really a developed argument. And then also, maybe you could discuss if it went back to the District Court. If we agreed with the District Court on everything else, what would be left? Well, Your Honor, many times cases such as this dealing with inmate care have components of not only civil rights violations but also tort actions. It is certainly a situation where a tort action has, of course, a lower standard in meeting a negligence standard than the intentional or deliberate indifference of the civil rights. In this particular matter, the Court relied upon a public defender case. It's a one-page per curiam decision. No, I think Judge Tallien's question is why didn't you develop it more in your brief? Well, Your Honor, I think it is our first argument in the brief, and what is put forward is that the Butler and Baker case, the Nevada Supreme Court, made it clear that over a period of time there was a feeling that the discretion meant personal discretion. And so what they did in terms of trying to advise the Nevada courts as well as, in this instance, the law on the tort issues dealing with public entities, that, in fact, it wasn't a personal decision. It wasn't a discretionary matter on the part. But what it was was a situation where if they made the decision based upon economics, social policy. Now, we understand what the case says, but you didn't really develop the argument in terms of in your brief. Well, Your Honor. You know, it's not okay. You know, you can't just say I'm raising this issue and then do nothing about it. The cases are cited dealing with the issues, Your Honor, and I think the argument comes out of a motion for summary judgment. And so when you're looking at the determination that was made by the district court when it relied upon the case of Harris, that wasn't arguably wasn't the law as it cited because there were different immunities available to public defender offices that were totally unrelated to other public entities. I guess why would we need to do this? You seem to say that you need to develop more facts. I'm wondering in terms of on the jury trial was basically all about both sides saying why the decision was made, either to give certain care to Mr. Baxter or to not. Even though the standard, I recognize what you're saying, the standard of deliberate indifference is different than negligence, but the central part of the jury trial was, you know, why the decision was made. That's correct. What more could there, you know, what more could be developed beyond that? Didn't you both have an opportunity at that time to say everything about why the doctor made the decision? No, Your Honor, and that's part of the arguments dealing with the jury instructions. What the court district, federal district court did in this instance was misfocus the direction of the case. He took tort instructions and brought in comparative faults of the civil rights violation. In addition, he allowed Dr. Kerrison, who was head of the University Medical Hospital, which is the county hospital. Just a second. The evidence that your client had a medical card and could seek treatment goes both to comparative fault and also to mitigation of damages, doesn't it? It doesn't, Your Honor, because what you have is a situation. That was before the time period in which Dr. D'Amico was brought forward by Dr. Kwiatkowski's letter. Page 65 of Volume 1, Dr. Kwiatkowski was going to be permitted to do a full surgical removal of the cyst and tumor that was in his ear. So what occurred was, and it went over a long period of time, and it wasn't only Dr. Kwiatkowski. There were other doctors, Dr. Hans and Dr. Mumford were both documenting that they believed that Mr. Baskin Please address why the card isn't evidence of ability to seek treatment and failure to seek treatment unreasonably would be evidence of non-mitigation of damages. All it shows is that he has a prior pre-existing condition. That part of the case was not allowed, Your Honor. He has the ability to seek treatment for complete debridement and removal of the cyst. Well, and that wasn't shown, Your Honor. The problem was what they brought on was this individual who testified that he believed that as a director that he should have, from a policy standpoint, with that hospital, that they would allow indigent people.  That's a factual question for the jury to determine. Well, what's important, Judge, is you're looking at it from the wrong standpoint. He is in prison at that point in time, and then he is released. That's when the card comes. Then he comes over here, and this is when Dr. Yamiko and Dr. Kwiatkowski are trying to work out this treatment. So you have a situation where you're talking about a civil rights violation. The civil rights violation takes place over this period of time. So when you try and bring in what he was trying to bring and trying to argue medication. He's seeking United States dollars for his civil rights violation. The question is, did he use reasonable care himself in mitigating those damages? But that's not what the instruction deals with. And what you have is a determination by the court also in the same instructions that he's talking about what would be best practices. And whether you try and say that this is a situation where it's mitigation of damages, there's absolutely no case law, talking about developing the issue, there's absolutely no case law to affirm what the judge was trying to do here in terms of comparative fault. There's no cites to any cases other than tort cases and contract cases where you would take and look at that type of situation where an individual has been subjected to the civil rights violation. The civil rights violation occurs and what we were litigating was at the time in which Dr. Yamiko decided that he was not going to allow the treatment to go forward. I've got just a couple of minutes left if I could reserve some time. Thank you. Good morning, Your Honors, and may it please the Court, my name is Frederick Perdomo and I represent Dr. Yamiko in this appeal. Good morning. I'd like to just, you know, maybe for the students, I know that advocates always think that the time is theirs, but the judges think that it's our time to have our questions answered. So I want to direct you in terms of where your co-counsel, where counsel for the appellant started. Assume just for a moment, and I'm not saying that this is the case, but assume that if the findings of the jury trial were affirmed and assume that we know that the law has changed, that there's a different law in applying for the immunity on the state law claim, and assume that that was adequately raised just for that moment. If the case were to go back and there were nothing left but the state law claim, would the district court have jurisdiction to make the determination of immunity? What would happen? At that point, there's no guarantees that they would have jurisdiction at that point. At that point, what? If it was remanded to the district court, the court in this case was sitting in diversity jurisdiction or in supplemental jurisdiction. Your voice trails away when you get to speak loudly. What would the district court do? They were sitting in supplemental jurisdiction, and therefore their jurisdiction would be discretionary. But if the Federal claim went away, then it would likely ñ it would have to either go to the state court or ñ Mr. Perdomo. Yes. If we sustain the jury verdict as to the 1983 action, defense verdict, right? But we find that the judge was in error in dismissing the claim on the discretionary immunity basis, and we remand to the district court. At that moment, the district court has before it a state negligence claim without a federal nexus. What is your thinking about the jurisdiction of that district court? You said it had discretion? I don't believe they would have jurisdiction at that point. So we would remand with instructions to dismiss without prejudice. True? That would be correct, Your Honor. Okay. All right. Well, let's take another scenario. If we ñ can we decide that discretion based on the new law, based on what we have here? I think you can. Based on what's pled in the complaint, and under the new law, there is still basis to keep this claim dismissed. Well, the Martinez case says that the doctor's decision on diagnosis and on treatment are discretionary but are not immune. And D'Amico could be regarded as saying, we don't accept your diagnosis, we don't accept the treatment, but that decision, entirely discretionary, is not immune. We believe it is, actually. Why? Because it involves a government ñ there's a governmental discretion here in that there is an element where he's also making a decision based on budgetary concerns as well, based on what they have. Well, what's the policy? Do they have a state policy, we'll postpone treatment of prisoners as long as we can? Is there an announced policy on that? There's a policy where courts allow ñ No. Does the prison have a policy? Do they spell it out? No. Is there any evidence of a prison policy of postponing treatment of prisoners as long as we can? No matter how much they suffer, we'll put it off so we won't have to pay for it. Is that the policy? No. All right. Well, where is the policy, according to D'Amico? What this Court has to recognize is that prisons are a very unique circumstance and that ñ Say that again? Prisons are a very unique ñ it's a very unique environment. It's a highly structured environment. Exactly. And Martinez says things depend on circumstances, on the facts of the case. You can't rule abstractly. That's the thrust of Martinez. So what are the special circumstances under which the prison postponed the treatment of a suffering person? Because Dr. D'Amico is not the treating physician. He's the medical administrator. He's the medical director of the Nevada Department of Corrections. Yes, I know he is, but where is the policy that he's enforcing? His policies are based on ñ It's an ad hoc decision, isn't it? His policies are based on an allocation of resources. Do you have some policy chart that he followed, or did he just do this ad hoc? They're completely judgment ñ it's a judgment decision. It's a judgment, isn't it? Yeah. And it's an ad hoc judgment. There's no policy there. No. It would satisfy the first ñ oh, I'm sorry. There might be policy, but I guess the question is on this record, because it was litigated as in 1983. And obviously the indifference standard is different than the negligence standard. So I think what appellant is saying is that there could be other evidence. I mean, perhaps there would be evidence that cost is one of the things that they think about when they're making these decisions, but that wasn't really the focus of this trial, was it? No. So I guess what I'm saying is if you're asking us to make that determination here, could we really do it on this record? Since the focus below was really different than how Butler and Martinez focused this. Well, that's true, except what we're looking at is what they pled in the complaint. And based on the Gobbert analysis, they had the burden in the complaint to show that there were no policy considerations here. And once a judgment decision is entered, there's a presumption that it's based on policy. And that at that point, based on that presumption, that and the fact that they entered into the mix a decision that was based on a governmental function, strictly budgetary, that allows this Court to uphold that judgment. Your position is that a defendant claiming immunity has a presumption of immunity and the plaintiff has to prove they did not have it? Under the Gobbert test, which was adopted by the Nevada Supreme Court, once there's a judgment, once the first element that there's a judgment or choice, there's a presumption. Once there's a what? Once the first element is proven. What is the first element? Of the Gobbert analysis, judgment or choice. And then the second element is that there's a presumption that it was policy-based. Does Martinez say that? No. But the Gobbert test, the United States v. Gobbert says that. Huh? You're going to federal law? Well, that's what Nevada adopted. They adopted the federal test. Was there any discussion in the record, are there any facts at all, of how much this treatment to Mr. Baxter would have cost and what the budget was and whether Dr. Damico said that if we give this treatment to Mr. Baxter, we're going to have to not treat somebody else's appendectomy, anything like that? Not that I'm aware. Not a word of that. But that's what they pled in their complaint. And at that point, and based on a motion to dismiss, we're looking strictly at what's before the judge at that time. Right. And based on what they, I'm sorry, based on what they complained, they alleged, they said this decision was based on a governmental function and that it was a budgetary decision. And therefore, at that point, that satisfies the second element of the Martinez test or the Berkovitz-Gobbert test. Just saying it does it, though. Could you repeat that, please? Just saying it does it. Just saying that it was budgetary is enough. At this point, based on what they pled in the complaint, yes. Because it's a motion on the pleadings. Yes. I thought it was a motion for summary judgment. No, it was a motion to dismiss. All right. There don't appear to be further questions. Okay. Would you like me to conclude or? You have 26 minutes, 26 seconds to do that. Okay. I'll be very quick. This Court now has an opportunity to bring this case to finality. Mr. Baxter had a fair opportunity to litigate this case. Ultimately, a jury of his peers rendered a verdict in Dr. D'Amico's favor, and at this point it would be just to uphold those judgments. Thank you. Thank you for your argument. Mr. Potter, Mr. Perdomo brought up a fact which is somewhat troubling. If you pleaded that the reason that Dr. D'Amico did not approve the operation, which you claim was needed, and you pleaded in your own complaint that the reason he did that was a budgetary consideration, why isn't that based on considerations of social, economic, or political policy? Because it's not, Judge. What we pled was that they were, just as Judge Newman talked about, did you have a policy where you're not going to give treatment to people based upon the fact that you want to save money? That's different than having a situation maybe like we have now in some of the states where there's economic considerations and you have an economic policy. What exactly did you plead? We pled that we believe that they didn't give him the treatment. They delayed it to the period of time in which he was going to be released. For what reason? Based on what consideration? Based upon the fact that there was testimony from his ---- No, in your pleadings. What did you say? The words. What are the words? The words, I don't know the exact words, Your Honor. I'd have to look at the complaint. I mean, it would speak for itself. The theory was that they were attempting to delay and delay and delay because they knew from the minutes that were involved that we received prior to filing this. There were minutes showing that they knew when the expiration dates were. And so what they were doing was they were delaying treatment. The doctor said no, he had to get additional information. But his own doctors, the record shows that Dr. Hanf and Dr. Mumford were both sending in these minutes to the Utilization Committee, authorizations requesting. So your pleading was they were cheapskates, not that they were budgetary analysts. Exactly. And that's what's important when you look to the Hennepin County case that the Matuzak-Martinez case is pivoted upon. They're talking about day-to-day decisions, and those are situations that are not immune. And that's what was occurring in this particular matter. Dr. Yamiko had his hands on this patient. He was dealing with him directly, although he was the director. And he had a situation where he was farming out these cases to affirm that he believed he could do adequate medical treatment. When he got the report, for whatever reasons, they decided they weren't going to follow the doctor's report. Our theory was it was because they knew he was going to be released. Now, what occurred in actuality is after there was a blowup between Kwiatkowski and Dr. Yamiko and it was a heated argument and Kwiatkowski accused him of criminal conduct, they then shipped him from Las Vegas or Indian Springs up to Carson City and had him sit there. And he got absolutely no treatment whatsoever. And the testimony of Dr. Yamiko was that they were trying to get him treatment even after there was a problem with these other guys. If we remanded, and this was the only issue, the district court would have discretion to dismiss it? I'm sorry? If we remanded on the State issue, and that was the only one remaining, would the district court have power to dismiss it? They would have power to dismiss it because it's a State case. Is it too late for you to go into State court? Well, that's what actually happened in the Bear case. Is it too late or not?  I don't believe so. You can remand it without prejudice. That's what happened in the Bear case. In the Bear case, he went through the Federal system, got bumped and went into the State system and then the Nevada Supreme Court. And your statute of limitation would be told by the pendency of the sanction? I believe so, Your Honor. Thank you. All right. Thank you both for your argument. This matter will stand submitted.
judges: Noonan, Callahan, Bea